**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FABIO BRETAS DE FREITAS, PHY CAPITAL INVESTMENTS LLC f/k/a PHYNANCE CAPITAL MANAGEMENT LLC,**<br><br>**Defendants and**<br><br>**PHY GLOBAL PARTNERS FUND, LLC, GLOBAL PARTNERS INVESTORS LLC, LATAM EAGLE FUND, LLC, f/k/a PHY PALME FUND, ABSOLUTE EXPERIENCE, LLC, d/b/a ABSOLUTE EXPERIENCE FUND, LLC, PHYNANCE SCIENCE and TECHNOLOGY INVESTMENTS S.A. a/k/a PHYNANCE CIENCIA E TECNOLOGIA EM INVESTIMENTOS S/A, and RM Jr. FUND**<br><br>**Relief Defendants** | **Civil No.**<br><br>**Complaint for Injunctive and Other Equitable Relief and Civil Monetary Penalties Under the Commodity Exchange Act** |

## COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT

The Commodity Futures Trading Commission ("CFTC" or "Commission"), by and through its attorneys, hereby alleges as follows:

### I.    SUMMARY

1.    This matter involves a fraudulent scheme orchestrated by Fabio Bretas de Freitas ("Bretas de Freitas"), Chief Executive Officer, principal and an associated person ("AP") of Phy Capital Investments LLC ("PCI"), f/k/a Phynance Capital Management LLC, a registered

commodity pool operator ("CPO") and commodity trading advisor ("CTA"), that operated at least three commodity pools, Phy Global Partners Fund LLC ("PGP Fund"),Global Partners Investors LLC "(GPI Fund "),and Latam Eagle Fund, f/k/a Phy Palme Fund ("LEF Fund"), and two managed funds, Absolute Experience, LLC also doing business as Absolute Experience Fund, LLC ("AEF") and RM Jr. Fund  (collectively, the "Funds") through which Bretas de Freitas and PCI defrauded at least sixteen commodity pool participants who collectively invested at least $1,300,000, and at least two managed fund holders who invested $6,500,000 to trade commodity futures contracts on U.S. futures exchanges.

2.      From at least March 2016 to the present (the "Relevant Period"), Bretas de Freitas and PCI fraudulently solicited pool participants and a managed fund holder (collectively, "clients") and prospective clients by making material misrepresentations to them and failing to disclose material facts regarding the operation and performance of their commodity pools and managed fund.  The Defendants falsely represented to prospective clients and clients that the Funds used "Managed Futures" to invest in U.S. markets and utilized proprietary software called SOPhyA, which was overseen by the "Guardian," additional proprietary software that continuously analyzed the performance of SOPhyA, and automatically stopped trading to ensure the safety of investments.  Under the direction of Bretas de Freitas, PCI created promotional material touting that the PGP Fund's rate of return trading futures from February 2016 through November 2017 was 49.05%.  In fact, the Funds never traded commodity futures in U.S. markets and the only commodity accounts traded by Bretas de Freitas and PCI on U.S. exchanges were a PCI proprietary trading account and a managed account in the name of a PCI employee and his wife.  The PCI account incurred losses of over $85,000, and the managed account earned a net profit of less than $150.

3.      To conceal their fraudulent scheme, Defendants sent clients false account statements showing that the clients' accounts were earning profits trading commodity futures, when, in fact, clients' funds were never traded by Bretas de Freitas or PCI, and instead were misappropriated by these Defendants.  During the Relevant Period, although Bretas de Freitas and PCI received more than $6,500,000 in investor funds, only $155,000 was ever put into any trading account and the balance was either misappropriated for non-trading uses or returned to other investors in a manner akin to a Ponzi scheme.

4.      Additionally, in early November 2017, the National Futures Association ("NFA"), the self-regulatory organization for the U.S. derivatives industry, commenced an examination of PCI, a registered CPO and CTA.  During the examination, Bretas de Freitas, an AP, principal, and Chief Executive Officer of PCI, falsely represented to NFA staff that:  i) the PGP Fund was a private equity fund created to develop intellectual property to be sold to other businesses; ii) the PGP Fund had extended over $700,000 in loans to him and PCI; iii) he would pay back all purported PGP Fund loans by June 8, 2018, and he would remove himself from the PGP Fund and have no further ownership in the Fund; and iv) after June 8, 2018, that he had repaid the purported PGP Fund loans.  Bretas de Freitas also showed NFA staff checks purportedly representing those repayments.

5.      Moreover, Bretas de Freitas set up a fictitious email account and led NFA staff to believe that they were communicating with a purported PGP Fund lender.  In fact, Bretas de Freitas used the account to impersonate the purported lender and to falsely communicate to NFA staff that the purported loan was "for the company [PGP] use [sic] with some on-going projects and temporary needs from Fabio."  Accordingly, by these misrepresentations and those described

in Paragraph 4 above, Bretas de Freitas provided false, fictitious, and fraudulent statements to NFA, a registered futures association.

6.      By virtue of this conduct and the conduct further described herein, Defendants have engaged, are engaging in, or are about to engage in fraud in violation of Sections 4b(a)(2)(A)-(C), 4*o*(1), and 9(a)(4) of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6*o*(1), 13(a)(4) (2012).  Bretas de Freitas controlled PCI, and failed to act in good faith or knowingly induced, directly or indirectly, its violations, and therefore is liable for its violations as a controlling person pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

7.      Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the Commission brings this action to enjoin such acts and practices, and compel compliance with the provisions of the Act.  In addition, the Commission seeks civil penalties, an accounting, restitution, disgorgement, rescission, and such other statutory and equitable relief as the Court may deem necessary or appropriate under the circumstances.

## II.      JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action under 28 U.S.C. § 1331 (2012) (federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), authorizes the CFTC to seek injunctive and other relief against any person whenever it appears to the CFTC that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

9.      Venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C.

§ 13a-1(e) (2012), in that Defendants are found in and/or transacted business in this District, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District.

### III.    THE PARTIES

**PLAINTIFF**

10.      **Plaintiff Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with the administration and enforcement of the Act and the Commission Regulations promulgated thereunder (the "Regulations"), 17 C.F.R. pts. 1-190 (2018).

**DEFENDANTS**

11.      Defendant **Fabio Bretas de Freitas** is 53years old and has resided in Miami, Florida.  On December 7, 2018, he was arrested on federal charges of wire fraud, bank fraud, commodities fraud, and aggravated identity theft and is currently being held at the Federal Bureau of Prisons in the Metropolitan Correctional Center in New York, New York.  He has been registered with the Commission as a principal of PCI, a registered CPO and CTA, from January 2010 through November 2013 and from September 2014 through the present as both a principal and AP of PCI.

12.      Defendant **Phy Capital Investments LLC, f/k/a Phynance Capital Management LLC**, located in Miami, Florida, is a Delaware limited liability company created on June 4, 2015.  PCI was registered with the Commission as a CPO and CTA between April 2010 and November 2013, then again since September 2014.

**RELIEF DEFENDANTS**

13.      **Phy Global Partners Fund LLC, Latam Eagle Fund, LLC, f/k/a Phy Palme**

**Fund and Global Partners Investors LLC** are commodity pools, and **Absolute Experience, LLC also doing business as Absolute Experience Fund, LLC** and **RM Jr. Fund** are managed funds located in Miami, Florida, all operated by PCI. **Phynance Science and Technology Investments S.A a/k/a Phynance Ciencia E Tecnologia Em Investimentos S/A** is located in São Paulo, Brazil and received Latam Eagle Fund, LLC, f/k/a Phy Palme Fund and RM Jr. Fund funds. Phy Global Partners Fund LLC is a Florida limited liability company that was created on February 17, 2016. Latam Eagle Fund, LLC, f/k/a Phy Palme Fund is a Delaware limited liability company that was formed on March 8, 2017. Global Partners Investors LLC is a Delaware limited liability company created on May 2, 2018. Absolute Experience, LLC is a Delaware limited liability corporation created on October 24, 2017. RM Jr. Fund, LLC is a Delaware LLC formed on January 1, 2017. Each of these funds received client funds intended to be invested in trading commodity futures contracts that were instead misappropriated by Bretas de Freitas and PCI.

### RELATED ENTITIES

14.     Bretas de Freitas also formed a number of other related companies and funds in Brazil and the United States: Absoluta Experiencia, LTDA, Absoluta Experience Ltd., Alpha Centuria Fund Partners LLC, Alpha Centuria Offshore Fund, SPC, Alpha Centuria Series Fund, LP, Phy Emerging Markets Fund, LLC, , SOPhyA Global Macro Fund, LLC, Santa Fe Trail Participacoes S.A and Phy Global Opportunities Fund. Bretas de Freitas distributed promotional material to at least one client that touted a return on investment of over 150% between December 2010 and March 2016 in the Phy Global Opportunities Fund in Brazil.

15.     The National Futures Association is a futures association registered with the Commission pursuant to Section 17 of the Act, 7 U.S.C. § 21 (2012). Membership in the NFA is

mandatory for all persons and entities conducting business with the public in the U.S. futures

industry, including CPOs and APs of CPOs.  Pursuant to its official duties as a registered futures

association, the NFA has developed a body of rules to safeguard market integrity, protect

investors from fraud, and help futures entities and their APs meet regulatory responsibilities.

NFA members are subject to examinations and investigations by the NFA to ensure compliance

with NFA rules, the Act, and Commission Regulations.  Cooperation and candor by NFA

members with NFA compliance and examination staff are critical to the NFA's ability to

discharge its obligations as a registered futures association to, among other things, protect

members of the public from persons or entities unlawfully soliciting customers, accepting

customer orders, or exercising trading discretion on behalf of customers.

## IV.   FACTS

Statutory Background

16.     A "commodity pool" is defined in Regulation 4.10(d)(1), 17 C.F.R. § 4.10(d)(1)

(2018), as any investment trust, syndicate, or similar form of enterprise operated for the purpose

of trading commodity interests.

17.     A "commodity pool operator" is defined in Section 1a(11) (A) of the Act,

7 U.S.C. § 1(a)(11)(A) (2012`), as any person engaged in a business that is of the nature of a

commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in

connection therewith, solicits, accepts or receives from others, funds, securities, or property,

either directly or through capital contributions, the sale of stock or other forms of securities or

otherwise, for the purpose of trading in commodity interests.

18.     An "associated person of a commodity pool operator" is defined in Regulation

1.3, 17 C.F.R. § 1.3 (2018), in relevant part, as any natural person who is associated with a CPO

as:  a partner, officer, employee, consultant, or agent to a CPO (or any natural person occupying a similar status or performing similar functions), in any capacity which involves (i) the solicitation of funds, securities or property for a participation in a commodity pool or (ii) the supervision of any person or persons so engaged.

19.     A "participant" is defined in Regulation 4.10(c), 17 C.F.R. § 4.10(c) (2018), as any person who has any direct financial interest in a commodity pool.

20.     A "commodity trading advisor" is defined in 7 U.S.C. § 1(a)(12)(A), in relevant part, as any person who for compensation or profit engages in the business of advising others, as to the value of or advisability of trading in any contract of sale of a commodity for future delivery."

21.     An "associated person of a commodity trading advisor" is defined in 17 C.F.R. § 1.3, in relevant part as any natural person who is associated with a CTA as:  a partner, officer, employee, consultant or agent to a CTA (or any natural person occupying a similar status or performing similar functions), in any capacity which involves (i) the solicitation of a client's or prospective client's discretionary account or (ii)  the supervision of any person or persons so engaged.

<u>Bretas de Freitas and PCI Fraudulently Solicited Pool Participants and at Least Two Managed Fund Holders</u>

22.     From the time Bretas de Freitas and PCI began soliciting for their commodity pools and managed funds, in March of 2016 through the present, they attracted at least twelve participants in the PGF Fund, at least four participants in the Latam Eagle Fund, LLC, f/k/a Phy Palme Fund, and at least two managed fund holders.  Bretas de Freitas and PCI solicited clients and prospective clients from the Brazilian community in Miami, Florida, in particular from Bretas de Freitas' church groups.

23.     Bretas de Freitas and PCI's promotional materials represented that their Funds invested in U.S. markets and utilized proprietary software called SOPhyA, which was "overseen by the 'Guardian,' an external proprietary software that analyzes continuously the behavior and performance of SOPhyA," and has the authority to automatically stop any trading to "keep our investments safe."  Private placement memoranda distributed to clients in the PGP Fund and the LEF Fund also stated that the commodity pools' investment objective would be "capital appreciation through trading in commodity interests."

24.     Promotional materials that PCI created under the direction of Bretas de Freitas for the PGP Fund represented that the PGP Fund's rate of return trading commodity futures from February 2016 through November 2017 was 49.05%.

25.     Similarly, when soliciting a participant for AEF, Defendant Bretas de Freitas also told at least one client that he could expect a rate of return in the range of 10% to 15% if the client gave Bretas de Freitas and PCI his money to manage.

26.     Based on Defendants' misrepresentations and omissions described above, at least sixteen clients collectively invested at least $1,300,000 in Bretas de Freitas and PCI's three commodity pools, the PGP, GPI, and LEF Funds, and at least one client invested $5,500,000 in AEF, a purported managed fund.

<u>Defendants Conducted No Trading on Behalf of the Funds</u>

27.     Bretas de Freitas and PCI's representations described above were false because Defendants conducted no trading in U.S. markets for any of their clients.

28.     The only trading by any Defendant was in one managed account and one proprietary account not even carried in the name of any of the Funds, and in de minimis amounts relative to the funds the Defendants solicited.

29.     In March 2016, a PCI employee and his wife opened a joint personal managed account and gave power of attorney to make trading decisions on the account to PCI, under its former name PCM, funding the account with $35,000.  Over the course of three months, the account experienced little trading activity, and gained a total of approximately $142.

30.     In December 2016, PCI, under its former name PCM, opened another futures trading account with trading authorization given to Bretas de Freitas and two other PCI staff Between December 2016 and December 2018, a total of $155,000 was deposited into this account, $86,346.82 was lost trading futures in eight months of trading activity, and $68,653.18 was withdrawn from the account.

### Defendants Made Material Misstatements and Omissions to Clients and Misappropriated Their Money

31.     Because Bretas de Freitas, as an AP and controlling person of PCI, never engaged in any commodity trading on behalf of any of the Funds, he knew that the Funds had no performance record and no funds under management.  Bretas de Freitas and PCI, therefore, knowingly and intentionally misstated material facts and made omissions to prospective clients and clients by representing that the Funds had positive returns trading commodity futures in U.S. markets, when in fact, the Funds never engaged in any commodity trading.

32.     Bretas de Freitas and PCI misappropriated pool participants' monies for their own benefit, in that they never conducted any commodity trading on behalf of pool participants and instead used the pool participants' money for their own purposes, including transferring funds to Bretas de Freitas' personal account, paying payroll, and making payments to participants in a manner akin to a Ponzi scheme.

33.     Bretas de Freitas and PCI also misappropriated the managed fund holders' money, using the funds for purposes other than commodity futures trading, including withdrawing significant funds to Bretas de Freitas' personal accounts.

34.     In or around January 2018, Defendants asked some or all of the participants of PGP to transfer their investments into a new fund called Global Partners Investors LLC, representing that the participants would become shareholders in this limited liability company. Defendants represented to the participants that "[t]here will be no change in relation to the investment strategy (SOPhyA)" and purported to issue shares in this new entity worth the sum of their principal investments plus the fictitious profits represented to the participants on false account statements.

35.     In or around October 2018, Defendants sent the participants in GPI a resolution to dissolve GPI in thirty days and to pay back all shareholders the value of their shares by no later than November 20, 2018.  In the resolution, each participant was promised a return of funds they invested plus the purported profits earned thereon.

36.     Defendants have not fully repaid the PGP or GPI participants as promised, nor have they fully repaid the participants in LEF or the managed fund holders in AEF and RM Jr..

Defendants Issued False Account Statements to Pool Participants and at Least Two Managed Account Holders

37.     During the Relevant Period, Defendants mailed or emailed account statements to clients that misrepresented the value of their respective interests in the Funds and concealed Bretas de Freitas and PCI's misappropriation of their monies.  In particular, the account statements Defendants issued to clients depicted false returns for the Funds, misrepresented the value of the clients' respective accounts, and concealed Defendants' misappropriation of their clients' moneys.

Defendant Fabio Bretas de Freitas Made False Statements and Omissions to the NFA

38.     In furtherance of its official duties under the Act, the NFA conducts periodic audits and examinations of NFA members as a means of monitoring and assuring compliance with NFA rules, the Act, and the Regulations.

39.     In early November 2017, the NFA commenced an examination of PCI.  During the examination, NFA staff asked Bretas de Freitas to provide information and documents in order to determine whether PCI was soliciting and/or operating any commodity pools or managing any customer accounts.  NFA staff also reviewed Defendants' bank records to determine whether Defendants were complying with the Act, the Regulations, and NFA rules in connection with operating either commodity pools or managing commodity accounts.  In particular, NFA staff sought to confirm whether Bretas de Freitas and PCI were properly investing customer funds entrusted to them and not misappropriating those funds by making unauthorized transfers to themselves or others.

40.     During the examination, the NFA received documents relating to the PGP Fund from a PCI employee and asked Bretas de Freitas the purpose of the fund.  Bretas de Freitas falsely represented to NFA staff that:  i) the PGP Fund was a private equity fund created to develop intellectual property to be sold to other businesses; ii) the PGP Fund had extended over $700,000 in loans to him and PCI; iii) he would pay back all purported PGP Fund loans by June 8, 2018, and he would remove himself from PGP Fund and have no further ownership in the Fund; and iv) after, June 8, 2018, that he had repaid the purported PGP Fund loans.  Bretas de Freitas showed NFA staff checks purportedly representing those repayments.

41.     When NFA staff attempted to confirm Bretas de Freitas' representations concerning his involvement with the PGP Fund and his repayment of all purported PGP loans,

Bretas de Freitas set up a fictitious email account and led NFA staff to believe that they were communicating with a purported PGP Fund lender.  In fact, Bretas de Freitas controlled the email account and used the account to impersonate the purported lender and to falsely communicate to NFA staff that the purported loan was "for the company [PGP] use [sic] with some on-going projects and temporary needs from Fabio."

42.    By their material misrepresentations and omissions to NFA staff described above, Bretas de Freitas and provided false, fictitious, and fraudulent statements to NFA, a designated and registered futures association.

## V.    VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT I

### Violations of Section 4b(a)(1)(A) and (C) the Act:  Fraud by Misrepresentations and Misappropriation

43.    The allegations set forth in paragraphs 1 through 42 are re-alleged and incorporated herein.

44.    Section 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A),(C) (2012), make it unlawful "for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person – (A) to cheat or defraud or attempt to cheat or defraud the other person; . . . or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for . . . the other person."

45.     During the Relevant Period, Defendants Bretas de Freitas and PCI violated 7 U.S.C. § 6b(a)(1)(A) and (C), in that they cheated or defrauded or attempted to cheat or defraud and willfully deceived or attempted to deceive clients or prospective clients by:  i) falsely representing that their Funds traded commodity interests in U.S. markets and utilized proprietary software called SOPhyA, which was overseen by the "Guardian," additional proprietary software that continuously analyzed the performance of SOPhyA, and automatically stopped trading to ensure the safety of investments; ii) falsely representing that the PGP Fund had 49.05% rate of return from February 2016 through November 2017 trading commodity futures, when, in fact, Defendants never traded commodity futures on behalf of any of the Funds; and iii) misappropriating clients' monies.

46.     Defendants engaged in this violative conduct in or in connection with orders to make, or the making of, contracts of sale of commodities, for future delivery, made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of such other persons.

47.     Bretas de Freitas controlled PCI, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting PCI's, violations alleged in this count.  Bretas de Freitas is thereby liable for PCI's violations of 7 U.S.C. § 6b(a)(1)(A) and (C) pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

48.     Bretas de Freitas was acting as an agent of PCI, when he violated the Act with regard to the clients, therefore, PCI, as Bretas de Freitas' principal, is liable for Bretas de Freitas' acts constituting violations of 7 U.S.C. § 6b(a)(1)(A) and (C) pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2018).

49.     Each material misrepresentation or omission and each misappropriation made during the Relevant Period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(1)(A),(C).

## COUNT II

### Violations of Section 4b(a)(1)(B) of the Act:  Fraud by False Statements

50.     The allegations set forth in paragraphs 1 through 42 are re-alleged and incorporated herein.

51.     Section 4b(a)(1)(B)of the Act, 7 U.S.C. § 6b(a)(1)(B) (2012), makes it unlawful "for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person – . . . (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record."

52.     Defendants Bretas de Freitas and PCI violated 7 U.S.C. § 6b(a)(2)(B), in that these Defendants willfully made or caused to be made false statements to their clients that misrepresented that the Funds traded commodity futures, the value of the clients' respective interest in the Funds' pools and managed fund, and concealed Bretas de Freitas and PCI's misappropriation of their monies.

53.     Bretas de Freitas and PCI engaged in this violative conduct in or in connection with orders to make, or the making of, contracts of sale of commodities, for future delivery, made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of such other persons.

54.     Bretas de Freitas controlled PCI, and did not act in good faith or knowingly

induced, directly or indirectly, the acts constituting PCI's violations alleged in this count.  Bretas de Freitas is thereby liable for PCI's violations of 7 U.S.C. § 6b(a)(1)(B) pursuant to 7 U.S.C. § 13c(b).

55.     Bretas de Freitas was acting as an agent of PCI when he violated the Act with regard to the commodity pool participants, therefore, PCI as Bretas de Freitas' principal, is liable for Bretas de Freitas' acts constituting violations of 7 U.S.C. § 6b (a)(1)(B), pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

56.     Each false report or statement made during the Relevant Period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(1)(B).

## COUNT III

## Violations of Section 4*o*(1) of the Act:  Fraud by a CPO and CTA and by an AP of a CPO and CTA

57.     The allegations set forth in paragraphs 1 through 42 are re-alleged and incorporated herein.

58.     During the Relevant Period, PCI acted as a CPO with regard to the commodity pools, the PGP Fund, the GPI Fund, and the Latam Eagle Fund f/k/a Phy Palme Fund, in that it engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and, in connection therewith, solicited, accepted or received from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities or otherwise, for the purpose of trading in commodity interests.

59.     Similarly, with regard to the PGP Fund, the GPI Fund, and the Latam Eagle Fund f/k/a Phy Palme Fund, Bretas de Freitas acted as an AP of a CPO in that he solicited funds for the PGP Fund, the GPI Fund, and the Latam Eagle Fund f/k/a Phy Palme Fund.

60.     During the Relevant Period, PCI acted as a CTA with regard to the managed funds AEF and RM Jr. in that for compensation or profit, it engaged in the business of advising others as to the value of or advisability of trading in any contract of sale of a commodity for future delivery.

61.     Similarly, with regard to AEF  and RM Jr ,Bretas de Freitas also acted as an AP of a CTA in that he solicited funds for AEF  and RM Jr..

62.     During the Relevant Period, PCI, and Bretas de Freitas violated 7 U.S.C. § 6$o$(1), in that as a CPO and CTA and as APs of a CPO and a CTA, they directly or indirectly employed or are employing a device, scheme, or artifice to defraud their commodity pool participants and managed fund holders, or have engaged or are engaging in transactions, practices or a course of business which operated as a fraud or deceit upon commodity pool participants and managed fund holders by:  i) falsely representing that PCI's Funds traded commodity interests in U.S. markets and utilized proprietary software called SOPhyA, which was overseen by the "Guardian," additional proprietary software that continuously analyzed the performance of SOPhyA, and automatically stopped trading to ensure the safety of investments; ii) falsely representing that the PGP Fund had a 49.05%  rate of return from February 2016 through November 2017 trading commodity futures, when, in fact, PCI, and Bretas de Freitas never traded commodity futures on behalf of any of the Funds; and iii) misappropriating clients' moneys.


63.     Bretas de Freitas controlled PCI and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting PCI's violations alleged in this count.  Bretas de Freitas is thereby liable for PCI's violations of 7 U.S.C. § 6$o$(1) pursuant to 7 U.S.C. § 13c(b).

64.     Bretas de Freitas was acting as an agent of PCI when he violated the Act with regard to PCI's clients, therefore, PCI as Bretas de Freitas' principal, is liable for his acts constituting violations of 7 U.S.C. § 6*o*(1) pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

65.     Each act of making false reports, false statements, and material omissions, and each misappropriation that occurred during the Relevant Period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6*o*(1).

## COUNT IV

## Violation of Section 9(a)(4) of the Act:  Misrepresentations to and Omissions from NFA

66.     The allegations set forth in paragraphs 1 through 42 are re-alleged and incorporated herein.

67.     Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4) (2012), makes it unlawful for any person willfully to falsify, conceal, or cover up by trick, scheme or artifice a material fact, or to make any false, fictitious, or fraudulent statements or representations, or to make or use any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry to a registered entity, board of trade, swap data repository, or futures association designated or registered under the Act and acting in furtherance of its official duties under the Act.

68.     Bretas de Freitas violated 7 U.S.C. § 13(a)(4) by willfully concealing material facts and/or making false, fictitious, or fraudulent statements or representations to NFA, a futures association registered under the Act, in connection with an examination that NFA conducted of PCI beginning in November 2017 in furtherance of NFA's official duties under the Act.

69.     Specifically, during the examination, Bretas de Freitas falsely represented to NFA staff that:  i) PGP Fund was a private equity fund created to develop intellectual property to be

sold to other businesses; ii) the PGP Fund had extended over $700,000 in loans to him and PCI; iii) he would pay back all purported PGP Fund loans by June 8, 2018, and he would remove himself from the PGP Fund and have no further ownership in the Fund; and iv) after June 8, 2018, that he had repaid the purported PGP Fund loans.  He also showed NFA staff false checks purportedly representing those repayments.

70.    Moreover, Bretas de Freitas set up a fictitious email account and led NFA staff to believe that they were communicating with a purported PGP Fund lender.  In fact, Bretas de Freitas used the account to impersonate the purported lender and to falsely communicate to the NFA staff that the purported loan was "for the company [PGP] use [sic] with some on-going projects and temporary needs of Fabio."

71.    Each act of willful concealment and/or false, fictitious, or fraudulent statement that Bretas de Freitas made to NFA, a futures association registered under the Act, in connection with the NFA's audit commencing in November 2017 of PCI, conducted in furtherance of NFA's official duties under the Act, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 13(a)(4).

## COUNT V.

## DISGORGEMENT OF FUNDS FROM RELIEF DEFENDANTS

72.    Paragraphs 1 through 42 are realleged and incorporated herein.

73.    Defendants Bretas de Freitas and PCI have engaged in a fraudulent scheme that defrauded their clients.

74.    The PGP Fund, GPI Fund, LEF Fund, AEF, RM Jr. and Phynance Science and Technology Investments  S.A  a/k/a Phynance Ciencia E Tecnologia Em Investimentos S/A ("PST" )received funds that were obtained as a result of Bretas de Freitas and PCI's fraud.

75.     The Funds and PST have no legitimate entitlement to, or interest in the funds received from Defendants' conduct.

76.     The Funds and PST should be required to disgorge the funds that they received from Bretas de Freitas and PCI's fraudulent conduct, or the value of those funds they may have subsequently transferred to third parties.

77.     By reason of the foregoing, the Funds and PST hold funds in constructive trust for the benefit of their participants, who were victimized by Bretas de Freitas and PCI's fraud.

## VI.     RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to its own equitable powers:

A.     Find that Defendants violated Sections 4b(a)(1)(A)-(C), 4o(1), and 9(a)(4)of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6o(1), 13(a)(4) (2012).

B.     Enter an order of permanent injunction enjoining Defendants  and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, who receive actual notice of such order by personal service or otherwise, from violating 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6o(1), and 13(a)(4); and

C.     Enter an order of permanent injunction restraining and enjoining Defendants, and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, from directly or indirectly:

1.     Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012);

2.     Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2018), for their own personal account or for any account in which he has a direct or indirect interest;

3.     Having any commodity interests traded on their behalf;

4.      Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

5.      Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

6.      Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2018); and/or

7.      Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2018)), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38) ) registered, exempted from registration or required to be registered with the Commission, except as provided for in 17 C.F.R. § 4.14(a)(9).

D.      Enter an order directing Defendants and Relief Defendants, as well as any third-party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act as described herein, including pre-judgment and post-judgment interest;

E.      Enter an order requiring Defendants to make restitution to persons who have sustained losses proximately caused by the violations described herein, including pre-judgment and post-judgment interest;

F.      Enter an order directing Defendants to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between Defendants and any of the customers whose funds were received by Defendants as a result of the acts and practices which constituted violations of the Act as described herein;

G.      Enter an order directing Defendants to pay a civil monetary penalty assessed by

the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act,

7 U.S.C. § 13a-1(d)(1) (2012), as adjusted for inflation pursuant to the Federal Civil Penalties

Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, 129 Stat. 584, title VII,

§ 701, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2018), for each violation of the Act, as described

herein;

   H. Enter an order requiring Defendants to pay costs and fees as permitted by

28 U.S.C. §§ 1920 and 2413(a)(2) (2012); and

   I. Enter an order providing such other and further relief as this Court may deem

necessary and appropriate under the circumstances.


Dated:  May 9, 2019     Respectfully submitted,

               /s/ Elizabeth M. Streit
               Elizabeth M. Streit
               (Illinois ARDC No. 6188119)

               /s/Scott R. Williamson
               Scott R. Williamson
               (Illinois ARDC No. 6191293)

               U.S. COMMODITY FUTURES
               TRADING COMMISSION
               525 West Monroe Street, Suite 1100
               Chicago, IL  60661
               (312) 596-0537 (Streit)