IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | |
| Plaintiff, | |
| v. | Civil No. 1:19:04238 (JMF) |
| FABIO BRETAS DE FREITAS, PHY CAPITAL INVESTMENTS LLC f/k/a PHYNANCE CAPITAL MANAGEMENT LLC, | |
| Defendants, | |
| and | |
| PHY GLOBAL PARTNERS FUND, LLC, GLOBAL PARTNERS INVESTORS LLC, LATAM EAGLE FUND, LLC f/k/a PHY PALME FUND, ABSOLUTE EXPERIENCE, LLC d/b/a ABSOLUTE EXPERIENCE FUND, LLC, PHYNANCE SCIENCE AND TECHNOLOGY INVESTMENTS S.A. a/k/a PHYNANCE CIENCIA E TECNOLOGIA EM INVESTIMENTOS S/A, and RM Jr. FUND | |
| Relief Defendants. | |

[~~REVISED~~PROPOSED] ORDER AND JUDGMENT BY DEFAULT AGAINST DEFENDANTS FABIO BRETAS DE FREITAS and PHY CAPITAL INVESTMENTS LLC f/k/a PHYNANCE CAPITAL MANAGEMENT LLC and RELIEF DEFENDANTS PHY GLOBAL PARTNERS FUND, LLC, GLOBAL PARTNERS INVESTORS LLC, LATAM EAGLE FUND, LLC f/k/a PHY PALME FUND, ABSOLUTE EXPERIENCE, LLC d/b/a ABSOLUTE EXPERIENCE FUND, LLC, PHYNANCE SCIENCE AND TECHNOLOGY INVESTMENTS S.A. a/k/a PHYNANCE CIENCIA E TECNOLOGIA EM INVESTIMENTOS S/A, and RM Jr. FUND

Before the Court is Plaintiff Commodity Futures Trading Commission's

("Plaintiff," "CFTC," or "Commission") Motion for Default Judgment Against

Defendants Fabio Bretas De Freitas and Phy Capital Investments LLC f/k/a Phynance Capital Management LLC ("Defendants") and Relief Defendants Phy Global Partners Fund, LLC ("PGP Fund"), Global Partners Investors LLC ("GPI"), Latam Eagle Fund, LLC ("LEF Fund") f/k/a Phy Palme Fund, Absolute Experience, LLC d/b/a Absolute Experience Fund, LLC ("AEF Fund"), Phynance Science and Technology Investments S.A. a/k/a Phynance Ciencia E Tecnologia Em Investimentos S/A, ("PCT") and RM Jr. Fund ("RMJ Fund") ("Relief Defendants" or "Funds"). For the reasons stated below, and good cause having been shown, judgment by default is hereby entered against Defendants and Relief Defendants pursuant to Local Civil Rule 55.2(b) and Federal Rule of Civil Procedure 55(b).

## I. BACKGROUND

1. On May 9, 2019, Plaintiff filed a Complaint against Defendants and Relief Defendants, alleging violations of Sections 4b(a)(1)(A)-(C), 4$o$(1), and 9(a)(4) of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 6b(a)(1), 6$o$(1), 13(a)(4). ECF No. 1 ("Compl."). On May 14, 2019, Plaintiff's process server served Relief Defendant GPI with the Summons and Complaint by serving its registered agent Business Filings Incorporated at 108 West 13th Street, Wilmington, Delaware, and on June 3, 2019, a Deputy Sheriff of the City and State of New York personally served Defendant Fabio Bretas de Freitas ("Bretas") and served Phy Capital Investments LLC f/k/a Phynance Capital Management LLC ("PCI") and the remainder of the Relief Defendants with Summons and the Complaint at the Metropolitan Correctional Center at 150 Park Row, New York, New York, by serving their managing partner, Bretas. ECF Nos. 26-33.

2.       Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A)(i), GPI was required to answer or otherwise respond to the Complaint by June 4, 2019, and the Defendants and the remainder of the Relief Defendants were required to answer or otherwise respond to the Complaint by June 24, 2019.  Defendants and Relief Defendants failed to do so.

3.       On July 3, 2019, Plaintiff requested a Clerk's Certificate of Default pursuant to Local Civil Rule 55.1 and Federal Rule of Civil Procedure 55(a), which the Clerk of the Court issued that same day.  ECF Nos. 38-42.

## II.      COMPLAINT ALLEGATIONS AND SUPPORTING EVIDENCE

4.       According to the Complaint, the factual allegations of which the Court takes as true for purposes of default judgment, from at least March 2016 through the present (the "Relevant Period"), Defendants fraudulently solicited clients and prospective clients to trade commodity interests, in violation of Sections 4o(1) and 4b(a)(1) of the Act, 7 U.S.C. §§ 6o(1), 6b(a)(1).  Compl. ¶¶ 22-26.  Although Defendants received $6,894,979 in client funds, only $155,500 was ever put into any trading accounts and the balance was either misappropriated for non-trading uses or returned to other clients in a manner akin to Ponzi scheme.  ECF No. 56-14 ("McCormack Decl."), ¶¶ 38, 42.

5.       The Defendants used promotional material that claimed that they developed a proprietary software called SoPhyA to trade "global high liquid commodity interests" which was "overseen by the 'Guardian,' an external proprietary software that analyzes continuously the behavior and performance of SOPhyA," and has the authority to automatically stop any trading to "keep our investments safe."  Compl. ¶ 2.

Bretas claimed to be the "first Brazilian Quant Fund manager," and cited a total return of over 150% for his Brazilian fund from 2011 to mid-2015. McCormack Decl. ¶ 19.

6. Private placement memoranda distributed to clients in the PGP Fund and the LEF Fund also stated that the commodity pools' investment objective would be "capital appreciation through trading in commodity interests." Compl. ¶ 23.

7. Defendants represented that the PGP Fund's rate of return trading commodity futures from SOPhyA had an alleged track record trading futures from February 2016 through November 2017 of 49%. Compl. ¶ 24, McCormack Decl. ¶ 19.

8. Similarly, when soliciting clients for other Funds, Bretas disseminated false promotional material claiming a history of consistent trading profits. McCormack Decl. ¶ 19.

9. Based on Defendants' misrepresentations and omissions, eighteen clients collectively invested $6,894,979 with Defendants' Funds. McCormack Decl. ¶¶ 40, 43.

10. Defendants conducted no trading in U.S. markets for any of their clients. Defendants only conducted trading in two accounts - one for a PCI employee and his wife and the other a proprietary account that was not in the name of any of the Defendants' Funds and traded in much smaller amounts than the amounts Defendants collected from their clients. Compl. ¶¶ 27-28; McCormack Decl. ¶¶ 37, 38.

11. The account opened for the PCI employee and his wife contained only their funds. A total of $155,500 was deposited in the PCI proprietary account, $86,346.82 was lost trading futures in eight months of trading activity, and $68,653.18 was withdrawn from the account. Compl. ¶ 30; McCormack Decl. ¶¶ 37, 38.

12.     During the Relevant Period, Defendants emailed account statements to clients that misrepresented the value of their respective interests in the Funds and concealed Defendants' misappropriation of their monies.  In particular, the account statements Defendants issued to clients depicted false returns for the Funds, misrepresented the value of the clients' respective accounts, and concealed Defendants' misappropriation of their clients' money.  Compl. ¶ 37, McCormack Decl. ¶ 19.

13.     The Complaint also alleges that Bretas made false statements and omissions to the National Futures Association ("NFA").  Compl. ¶¶ 38-42.

14.     In furtherance of its official duties under the Act, NFA conducts periodic audits and examinations of NFA members as a means of monitoring and assuring compliance with NFA rules, the Act, and the Regulations.  Compl. ¶ 38.

15.     In November 2017, NFA began an examination of PCI.  During the examination, NFA staff asked Bretas to provide information and documents in order to determine whether PCI was soliciting and/or operating any commodity pools or managing any customer accounts.  NFA staff also reviewed Defendants' bank records to determine whether Defendants were complying with the Act, the Regulations, and NFA rules in connection with operating either commodity pools or managing commodity accounts.  In particular, NFA staff sought to confirm whether Bretas and PCI were properly investing customer funds entrusted to them and not misappropriating those funds by making unauthorized transfers to themselves or others.  Compl. ¶¶ 38-39.

16.     During the examination, the NFA received documents relating to the PGP Fund from a PCI employee and asked Bretas the purpose of the fund.  Bretas falsely

represented to NFA staff that: i) the PGP Fund was a private equity fund created to develop intellectual property to be sold to other businesses; ii) the PGP Fund had extended over $700,000 in loans to him and PCI; iii) he would pay back all purported PGP Fund loans by June 8, 2018, and he would remove himself from PGP Fund and have no further ownership in the Fund; and iv) after June 8, 2018, that he had repaid the purported PGP Fund loans.  Bretas showed NFA staff checks purportedly representing those repayments.  Compl. ¶ 40.

17.     When NFA staff attempted to confirm Bretas' representations concerning his involvement with the PGP Fund and his repayment of all purported PGP loans, Bretas set up a fictitious email account and led NFA staff to believe that they were communicating with a purported PGP Fund lender.  In fact, Bretas controlled the email account and used the account to impersonate the purported lender and to falsely communicate to NFA staff that the purported loan was "for the company [PGP] use [sic] with some on-going projects and temporary needs from Fabio."  Compl. ¶ 41.

18.     The PGP Fund, GPI, LEF Fund, AEF Fund, RMJ Fund and PCT all received funds from investors that were obtained as a result of Bretas and PCI's fraud. Compl. ¶ 74; McCormack Decl. ¶¶ 39-101.  The Funds have no legitimate entitlement to or interest in these funds.  Compl. ¶ 75.

## III.    THE COMPLAINT ADEQUATELY PLEADS ITS CAUSES OF ACTION

### A.    Plaintiff Has Adequately Alleged that Defendants Violated 7 U.S.C. § 6b(a)(1)(A)-(C) by Committing Fraud by Fraudulent Solicitations, Misappropriation, and False Statements (Counts I and II)

19.     Section 4b(a)(1) of the Act, 7 U.S.C. § 6b(a)(1), states that

It shall be unlawful–(1) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person . . . (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract . . . .

20.     To establish a violation of 7 U.S.C. § 6(b), the Commission must show that a defendant made a material misrepresentation or omission with scienter.  *CFTC v. Int'l Fin. Servs. (N.Y.), Inc.*, 323 F. Supp. 2d 482, 499, 502 (S.D.N.Y. 2004) (quoting *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002)).

21.     A statement is material "if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision." *CFTC v. AVCO Fin. Corp.*, 28 F. Supp. 2d 104, 115 (S.D.N.Y. 1998), *aff'd in part, rev'd in part on other grounds and remanded sub nom. CFTC v. Vartuli*, 228 F.3d 94 (2d Cir. 2000) (quoting *Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 109 (2d Cir. 1986)).

22.      Scienter is a mental state embracing an intent to deceive, manipulate, or defraud, and may be shown by proof of recklessness.  *See, e.g.*, *Int'l Fin. Servs.*, 323 F. Supp. 2d 482 at 502.

23.     Misrepresentations and omissions concerning the likelihood or guarantee of profit, the risk of loss, and trading experience are matters that a reasonable investor would consider fundamentally important to an investment decision.  *See, e.g.*, *Saxe*, 789 F.2d at 110, 112; *First Nat'l Monetary Corp. v. Weinberger*, 819 F.2d 1334, 1340 (6th Cir. 1987); *R.J. Fitzgerald*, 310 F.3d at 1332-33.

7

24.     Throughout the Relevant Period, Defendants knowingly made materially false and misleading statements to their clients such as: i) falsely representing that their Funds traded commodity interests in U.S. markets and utilized a proprietary software called SOPhyA, which was overseen by the "Guardian," additional proprietary software that continuously analyzed the performance of SOPhyA, and automatically stopped trading to ensure the safety of investments; and ii) falsely representing that PGP Fund had a 49.05% rate of return from February 2016 through November 2017 trading commodity futures, when, in fact, Defendants never traded commodity futures on behalf of any of the Funds.  Bretas and PCI also failed to disclose the material fact that they had misappropriated their clients' money.  Compl. ¶¶ 23-25, 27-33, 36, McCormack Decl. ¶¶ 17-20, 33-34, 42.

25.     The Defendants also willfully made or caused to be made false statements to their clients that misrepresented i) that the Funds traded commodity futures, and ii) the value of the clients' respective interest in the Funds' pools and managed funds; and concealed iii) Bretas and PCI's misappropriation of their clients' monies.  Compl. ¶ 52, McCormack Decl. ¶ 19.

26.     Accordingly, Plaintiff has stated a claim against Defendants for fraud in connection with commodity futures contracts in violation of Section 4b(a)(1) of the Act, 7 U.S.C. § 6b(a)(1).

**B.   Plaintiff Has Adequately Alleged that Defendants Violated 7 U.S.C. § 6$o$(1)(A) and (B) (Count III): Fraud by a Commodity Trading Advisor**

27.          Section 4$o$(1) of the Act, 7 U.S.C. § 6$o$(1), states that

> It shall be unlawful for a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly–(A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

28.     The elements required to establishing a fraud claim under 7 U.S.C. § 6o(1)(A) are "essentially the same" as for a fraud claim under 7 U.S.C. § 6b.  *See Alvin S. Schwartz, M.S., P.A. Employer/Employee Profit Sharing Plan v. O'Grady*, No. 86-CV-4243 (JMC), 1990 WL 156274, at *16 (S.D.N.Y. Oct. 12, 1990).  However, unlike Sections 4b and 4o(1)(A) of the Act, the language of Section 4o(1)(B) does not expressly require "knowing" or "willful" conduct as a prerequisite for establishing liability.  *See Commodity Trend Serv., Inc. v. CFTC*, 233 F.3d 981, 993-94 (7th Cir. 2000).  Section 4o(1) of the Act also differs from Section 4b of the Act in that it requires "the use of the mails or any means or instrumentality of interstate commerce."  7 U.S.C. § 6o(1).  Here, the Complaint alleges that Defendants' victims wired money to the pools and Bretas had email communications with them.  Compl. ¶ 37; McCormack Decl. ¶¶ 18, 21.

29.     As the Complaint adequately states a claim against Defendants for violating 7 U.S.C. § 6b, so too does it adequately state a claim against Defendants for violating Section 4o(1) of the Act, 7 U.S.C. § 6o(1).

30.     Accordingly, Plaintiff has stated a claim against Defendants for committing fraud as a commodity trading advisor, commodity pool operator, and an associated person of both a commodity trading advisor and commodity pool operator in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1).

**C. Plaintiff Has Adequately Alleged that Defendant Bretas Violated Section 9(a)(4) of the Act (Count IV) by Making Misrepresentations and Fraudulent Omissions to the NFA.**

31.    Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4), makes it unlawful for any person willfully to falsify, conceal, or cover up by trick, scheme, or artifice a material fact, or to make any false, fictitious, or fraudulent statements or representations, or to make or use any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry to a registered entity, board of trade, swap data repository, or futures association designated or registered under the Act and acting in furtherance of its official duties under the Act.

32.    The Complaint alleges that Bretas violated 7 U.S.C. § 13(a)(4) by willfully concealing material facts and/or making false, fictitious, or fraudulent statements or representations to NFA, a futures association registered under the Act, in connection with an examination that NFA conducted of PCI beginning in November 2017 in furtherance of NFA's official duties under the Act.  Compl. ¶¶ 66-71.

33.    The Complaint alleges that Bretas lied to NFA about the purpose and the funding of the PGP Fund in order to conceal that the registrant PCI had clients and was conducting futures business, in violation of Section 9(a)(4).  Compl. ¶¶ 39-41.

**D. Bretas Controlled PCI and Is Liable for PCI's Violations Pursuant to Section 13(b) of the Act.**

34.    Section 13(b) of the Act provides that any person who, directly or indirectly, controls any person who has violated the Act, or regulations promulgated thereunder, may be held liable for such violations to the same extent as the controlled person.  To establish liability as a controlling person pursuant to Section 13(b), the CFTC must show that the person possesses the requisite degree of control and either:

10

(1) knowingly induced, directly or indirectly, the acts constituting the violation; or

(2) failed to act in good faith.  7 U.S.C. § 13c(b).

35.    Bretas possessed the requisite degree of control and knowingly induced the acts constituting the violations with which PCI was charged.  He was the principal and Chief Executive Officer of PCI, solicited clients and controlled PCI's bank accounts and all but one of the Funds' accounts.  Compl. ¶¶ 1, 11, 22, McCormack Decl. ¶¶ 6, 7, 17-20, 22-28.

36.    He also knowingly induced the misconduct.  Knowing inducement requires a showing that "the controlling person had actual or constructive knowledge of the core activities that make up the violation at issue and allowed them to continue." *R.J. Fitzgerald*, 310 F.3d at 1334 (quoting *JCC, Inc. v. CFTC*, 63 F.3d 1557, 1568 (11th Cir. 1995)).  Bretas solicited prospective clients, knowingly directed the issuance of false statements and false promotional material to clients and prospective clients, and misappropriated their money.  Compl. ¶¶ 22-25, 31-32, McCormack Decl. ¶¶ 17-19, 44, 61, 72, 81, 93.  Accordingly, Bretas knowingly induced PCI's violations of the Act and Regulations as set forth above and is liable for those violations pursuant to Section 13(b) of the Act.

**E. Bretas' Conduct Was Within the Scope of His Employment by PCI and PCI is Liable for Bretas' Violations Pursuant to Section 2(a)(1)(B) of the Act and Regulation 1.2, 17 C.F.R. § 1.2.**

37.    Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2, provide that:

11

> The act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent, or other person.

38.    Courts interpret this provision of the Act to codify the common law principle of respondent superior.  Under the common law doctrine, as well as principal liability under the Act, a principal is liable for the torts committed by its agent when the agents act in furtherance of the principal's business.  *CFTC v. Equity Fin. Grp. LLC*, No. 04-1512 (RBC), 2006 WL 3751911, at *9 (D.N.J. Dec. 18, 2006).

39.    The allegations and evidence show an agent-principal relationship between Bretas and PCI.   Bretas created PCI and was its Chief Executive Officer and principal. Compl. ¶¶ 1, 11; McCormack Decl. ¶¶ 6-7.  He was responsible for the day-to-day operations of the business.  He directed the creation of promotional material and private placement memoranda.  He controlled PCI's bank accounts and all but one of the Funds' bank accounts.  McCormack Decl. ¶¶ 19, 22-28.   Accordingly, PCI is liable for Bretas de Freitas' violations of the Act and Regulations pursuant to Section 2(a)(1)(B) of the Act, and Regulation 1.2.

### F.  RELIEF DEFENDANTS Must Disgorge Ill-Gotten Funds.

40.    The Court may grant equitable relief against a relief defendant if it is established that the relief defendant possesses property or profits illegally obtained, and the relief defendant has no legitimate claim to them.  *See SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998) ("Federal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds.");

*CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 192 n.4 (4th Cir. 2002) ("[I]t is entirely appropriate to allow the Commission to proceed against nominal defendants under the same circumstances in which the SEC could proceed against such defendants."). Relief Defendants have failed to establish their entitlement to the amounts that they illegally obtained and are therefore required to disgorge those amounts as set forth below.

## IV.    DEFAULT JUDGMENT IS PROPER

41.    Local Civil Rule 55.2(b) and Federal Rule of Civil Procedure 55(b) authorize plaintiffs to seek, and the Court to enter, default judgment against a party who has failed to plead or otherwise defend an action.

42.    This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

43.    Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), in that Defendants are found in and/or transacted business in this District, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District, among other places.

44. ~~The record reveals that Defendants' and Relief Defendants' default was willful.~~ The Defendants and Relief Defendants have not responded in any way to the summons or the Complaint or made any attempt to appear in this action or defend it.

45. Defendants and Relief Defendants have not shown a meritorious defense to the action. To show a meritorious defense, a defendant "must present evidence of facts that, if proven at trial, would constitute a complete defense." *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (citation and quotations omitted). As Defendants have presented no facts to the Court or denied any allegation of the Complaint, Defendants have not shown a meritorious defense to the action.

46. Plaintiff will suffer prejudice if a default judgment is not entered. Congress has charged Plaintiff with enforcing the Act to protect customers in the commodity futures markets. See *Loginovskaya v. Batratchenko*, 936 F. Supp. 2d 357, 363 (S.D.N.Y. 2013), *aff'd*, 764 F.3d 266 (2d Cir. 2014) (internal quotations omitted) (explaining that the Act is "a remedial statute that serves the crucial purpose of protecting the innocent individual investor . . . from being misled or deceived"). Absent a default judgment, Plaintiff will be frustrated in is ability to fulfill its mandate, prejudicing Plaintiff. *See SEC v. Fortitude Grp., Inc.*, C.A. No. 16-50, 2017 WL 818604, at *2 (W.D. Pa. Feb. 10, 2017) (entering default judgment because SEC would "be prejudiced by its inability to effectively enforce federal securities laws" absent judgment).

47. Under Local Rule 55.2(b) and Federal Rule of Civil Procedure 55(b), the Court takes as true the allegations of the Complaint listed in paragraphs 1-42.

48.     Accordingly, the Court hereby enters default judgment against Defendants and Relief Defendants pursuant to Local Civil Rule 55.2(b) and Federal Rule of Civil Procedure 55(b) and orders the relief set forth below.

## V.     RELIEF GRANTED

### A.     Permanent Injunction and Trading Bans

49.     The Commission may seek a permanent injunction "[w]henever it shall appear to the Commission that any . . . person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of this Act or any rule, regulation or order thereunder." 7 U.S.C. § 13a-1(a).

50.     To obtain a permanent injunction, Plaintiff must show that Defendants violated the Act and are reasonably likely to commit future violations. *CFTC v. Am. Bd. of Trade, Inc.*, 803 F.2d 1242, 1250-51 (2d Cir. 1986); *CFTC v. U.S. Metals Depository Co.*, 468 F. Supp. 1149, 1161-62 (S.D.N.Y. 1979). The Court may infer a likelihood of future violations from Defendant's past unlawful conduct. *Am. Bd. of Trade*, 803 F.2d at 1251.

51.     Defendants knowingly and willfully caused at least 18 clients to suffer losses of at least $4,202,994 during the Relevant Period, in violation of Sections 4b(a)(1), and 4*o*(1) of the Act, 7 U.S.C. §§ 6b(a)(1), 6*o*(1)(A). Defendant Bretas also sought to evade detection of his fraud by regulatory authorities by mischaracterizing the purpose of the PGP Fund, which was really a commodity pool, to NFA, and Defendants continued to solicit investor money for commodity futures and misappropriate it until he was arrested. McCormack Decl. ¶¶ 9, 40. Defendants' unlawful conduct during the Relevant Period, as well as their efforts to conceal their wrongdoing makes it reasonably

15

likely that Defendants will commit additional violations of the Act unless restrained by the Court.

52.    Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendant Fabio Bretas de Freitas is permanently restrained, enjoined and prohibited from directly or indirectly engaging in conduct in violation of Sections 4b(a)(1), 4$o$(1) and 9(a)(4) of the Act, 7 U.S.C. §§  6b(a)(1), 6$o$(1)(A), 13(a)(4).

53.    Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendant  Phy Capital Investments LLC f/k/a Phynance Capital Management LLC, is permanently restrained, enjoined and prohibited from directly or indirectly engaging in conduct in violation of Sections 4b(a)(1) and  4$o$(1) of the Act, 7 U.S.C. §§ 6b(a)(1), 6$o$(1)(A).

54.    Defendants are also permanently restrained, enjoined and prohibited from directly or indirectly:

(a)    trading on or subject to the rules of any registered entity (as that term is defined in Section la(40) of the Act, 7 U.S.C. § 1a(40));

(b)    entering into any transaction involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3) for their own personal account or for any account in which they have a direct or indirect interest;

(c)    having any commodity interests traded on their behalf;

(d)      controlling or directing trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

(e)      soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

(f)      acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9); and

(g)      engaging in any business activities related to commodity interests.

## B.      Restitution

55.      Defendants shall pay jointly and severally restitution in the amount of four million two hundred and two thousand nine hundred and ninety four dollars ($4,202,994), plus a total of four hundred and twenty two thousand one hundred and seventy-two dollars ($422,172) in prejudgment interest ("Restitution Obligation").  If the Restitution Obligation is not paid immediately, post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order, and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

56.      Defendant Fabio Bretas de Freitas has pleaded guilty in a criminal action charging him, in part, for the misconduct that is at issue in this matter.  *See United States v. Fabio Bretas de Freitas*, S3 19 Cr. 257, ECF No. 13 (August 8, 2019) ("Criminal

17

Action"). For amounts disbursed to Defendants' clients as a result of satisfaction of any restitution ordered in the Criminal Action, Defendants shall receive a dollar-for-dollar credit against the Restitution Obligation. Within ten days of disbursement in the Criminal Action to Defendants' clients, Defendants shall, under a cover letter that identifies the name and docket number of this proceeding, transmit to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606, copies of the form of payment to those clients.

57. To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defendants' clients, the Court appoints NFA as Monitor. The Monitor shall receive restitution payments from Defendants and make distributions as set forth below. Because the Monitor is acting as an officer of the Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

58. Defendants shall make Restitution Obligation payments, and any post-judgment interest payments, under this Order to the Monitor in the name of "Bretas de Freitas/Phy Capital Investments Restitution Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606, under cover letter that identifies the paying Defendant(s) and the name and docket number of this proceeding. Defendant(s) shall simultaneously transmit copies of the cover letter and

18

the form of payment to the Chief Financial Officer, Commodity Futures Trading

Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

59.    The Monitor shall oversee the Restitution Obligation and shall have the

discretion to determine the manner of distribution of such funds in an equitable fashion to

Defendants' clients identified by the Commission or may defer distribution until such

time as the Monitor deems appropriate.  In the event that the amount of Restitution

Obligation payments to the Monitor are of a de minimis nature such that the Monitor

determines that the administrative cost of making a distribution to eligible clients is

impractical, the Monitor may, in its discretion, treat such restitution payments as civil

monetary penalty payments, which the Monitor shall forward to the Commission

following the instructions for civil monetary penalty payments set forth in Part D below.

60.    Defendants shall cooperate with the Monitor as appropriate to provide

such information as the Monitor deems necessary and appropriate to identify Defendants'

customers to whom the Monitor, in its sole discretion, may determine to include in any

plan for distribution of any Restitution Obligation payments.  Defendants shall execute

any documents necessary to release funds that they hold in any repository, bank,

investment, or other financial institution, wherever located, in order to make partial or

total payment toward the Restitution Obligation.

61.    The Monitor shall provide the CFTC at the beginning of each calendar

year with a report detailing the disbursement of funds to Defendants' customers during

the previous year.  The Monitor shall transmit this report accompanied by a cover letter

identifying the name and docket number of this proceeding to the Chief Financial Officer,

19

Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

62.     The amounts payable to each client shall not limit the ability of any client from proving that a greater amount is owed from Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that exist under state or common law.

63.     Pursuant to Federal Rule of Civil Procedure 71, each client of Defendants who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the Restitution Obligation that has not been paid by Defendants, to ensure continued compliance with any provision of this Order, and to hold Defendants in contempt for any violations of any provision of this Order.

64.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendants' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

### C.     Disgorgement

65.     Relief Defendants shall pay disgorgement, representing the gains illegally obtained to which they are not entitled.  Each Relief Defendant's respective disgorgement obligation is set forth below:

        a) Phy Global Partners: $651,800, plus prejudgment interest of $78,045 for a total of $729,845.  McCormack Decl. ¶¶ 51-54; ECF Nos. 56-60, 56-61.

        b) Global Partners Investors: prejudgment interest of $6,250. ECF No. 60-2.

c) Latam Eagle Fund: $178,000, plus prejudgment interest of $10,175 for a total of $188,175.  McCormack Decl. ¶¶ 70-72; ECF Nos. 56-68, 56-69.

d) Absolute Experience Fund: $3,200,000, plus prejudgment interest of $310,000, for a total of $3,510,000.  McCormack Decl ¶¶ 78-81; ECF Nos. 56-72, 56-73.

e) Phynance Science and Technology Investments:  $73,194.17, plus prejudgment interest of $13,952 for a total of $87,146. McCormack Decl. ¶¶ 93-95; ECF Nos. 56-79, 56-80.

f) RM Jr. Fund:  $1,114,873, plus prejudgment interest of $115,752, for a total of $1,230,626. McCormack Decl. ¶¶ 98-99, ECF No. 56-82.

66.     To effect payment of the disgorgement obligations of Relief Defendants Phy Global Partners, Global Partners Investors, Latam Eagle Fund, Absolute Experience Fund and Phynance Science and Technology Investments and the distribution of any disgorgement payments to Defendants' clients, the Court appoints NFA as Monitor.  The Monitor shall receive disgorgement payments from Relief Defendants Phy Global Partners, Global Partners Investors, Latam Eagle Fund, Absolute Experience Fund and Phynance Science and Technology Investments and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

67.     Relief Defendants Phy Global Partners, Global Partners Investors, Latam Eagle Fund, Absolute Experience Fund and Phynance Science and Technology Investments shall make their disgorgement payments, and any post- judgment interest payments, under this Order to the Monitor in the name "The Relief Defendant Disgorgement Fund" and shall send such payments by electronic funds transfer, or by

21

U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies the paying Relief Defendant and the name and docket number of this proceeding. The Relief Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

68. The Monitor shall oversee the disgorgement obligations and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendants' clients identified by the Commission or may defer distribution until such time as the Monitor deems appropriate. To the extent Defendants' clients receive restitution from Defendants or are otherwise compensated for their losses, the disgorgement obligation of the Relief Defendant the client invested with will be respectively reduced. In the event that the amount of disgorgement payments to the Monitor are of a de minimis nature such that the Monitor determines that the administrative cost of making a distribution to eligible clients is impractical, the Monitor may, in its discretion, treat such disgorgement payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Part D below.

69. Relief Defendants Phy Global Partners, Global Partners Investors, Latam Eagle Fund, Absolute Experience Fund and Phynance Science and Technology Investments shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendants' clients to whom

the Monitor, in its sole discretion, may determine to include in any plan for distribution of any disgorgement payments.  Relief Defendants Phy Global Partners, Global Partners Investors, Latam Eagle Fund, Absolute Experience Fund and Phynance Science and Technology Investments shall execute any documents necessary to release funds that they have in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward their respective disgorgement obligations.

70.    As to RM Jr. Fund, because the beneficial ownership of the investments made to it cannot be determined, it shall pay its disgorgement and any post-judgment interest to the U.S. Treasury.  Payment should be made by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

71.    If payment by electronic funds transfer is chosen, RM Jr. Fund shall contact Marie Thorne or her successor at the address above to receive payment instructions and shall fully comply with those instructions. RM Jr. Fund shall accompany payment of  its disgorgement obligation with a cover letter that identifies RM Jr. Fund

and the name and docket number of this proceeding. RM Jr. Fund shall simultaneously

transmit copies of the cover letter and the form of payment to the Chief Financial Officer,

Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW,

Washington, D.C. 20581.

### D.   Civil Monetary Penalty

72.   Defendants are ordered to pay, on a joint and several basis, a civil

monetary penalty in the amount of $12,608,982 (twelve million six hundred and eight

thousand nine hundred and eighty two dollars), plus post-judgment interest thereon

("CMP Obligation"). If the CMP Obligation is not paid in full within thirty days of the

date of entry of this Order, then post-judgment interest shall accrue beginning on the date

of entry of this Order and shall be determined by using the Treasury Bill rate prevailing

on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2012).

73.   Defendants shall pay their CMP Obligation and any post-judgment interest

by electronic funds transfer, U.S. postal money order, certified check, bank cashier's

check, or bank money order. If payment is to be made other than by electronic funds

transfer, then payment shall be made payable to the Commodity Futures Trading

Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

24

If payment by electronic funds transfer is chosen, Defendants shall contact Marie Thorne or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Defendants shall accompany payment of the CMP Obligation with a cover letter that identifies Defendants and the name and docket number of this proceeding.  Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, DC 20581.

### E.    Miscellaneous Provisions

74.    Partial Satisfaction:  Acceptance by the CFTC or the Monitor of any partial payment of the Restitution Obligation, the disgorgement obligations or the CMP Obligation shall not be deemed a waiver of Defendants' obligation to make further payments pursuant to this Order, or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

75.    Notice:  All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

> Scott R. Williamson
> Acting Deputy Director
> 525 West Monroe, Suite 1100
> Chicago, IL.  60661

Notice to Defendants:

> Fabio Bretas de Freitas
> MCC New York
> Metropolitan Correctional Center
> 150 Park Row
> New York, NY 100071

Notice to NFA:

> Daniel Driscoll, Executive Vice President, COO
> National Futures Association
> 300 S. Riverside Plaza, Suite 1800
> Chicago, IL 60606-3447

76.    Change of Address/Phone:  Until such time as Defendants and Relief

Defendants satisfy in full their Restitution Obligation, disgorgement obligations, and

CMP Obligation as set forth in this Order, Defendants and Relief Defendants shall

provide written notice to the Commission by certified mail of any change to his telephone

number and mailing address within ten calendar days of the change.

77.    Invalidation:  If any provision of this Order or if the application of any

provision or circumstance is held invalid, then the remainder of this Order and the

application of the provision to any other person or circumstance shall not be affected by

the holding.

78.    Injunctive and Equitable Relief Provisions:  The injunctive and equitable

relief provisions of this Order shall be binding upon Defendants, upon any person under

their authority or control, and upon any person who receives actual notice of this Order,

by personal service, email, facsimile or otherwise insofar as they are acting in active

concert or participation with Defendants.

79.    Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction

of this action to ensure compliance with this Order and for all other purposes related to

this action, including any motion by Defendants or Relief Defendants to modify, or for

relief from, the terms of this Order.

There being no just reason for delay, the Clerk of the Court is hereby instructed to

enter this Order and Judgment by Default Against Defendants Fabio Bretas de Freitas and

26

Phy Capital Investments LLC f/k/a Phynance Capital Management LLC and Relief

Defendants  Phy Global Partners Fund, LLC, , Global Partners Investors LLC, Latam

Eagle Fund, LLC, f/k/a Phy Palme Fund and Absolute Experience, LLC d/b/a Absolute

Experience Fund, LLC, Phynance Science And Technology Investments S.A  a/k/a

Phynance Ciencia E Tecnologia Em Investimentos S/A, and RM Jr. Fund forthwith and

without further notice.

**SO ORDERED**, this 3rd day of _____October_____, 2019.

_____
Jesse M. Furman
United States District Judge

The Clerk of Court is directed to terminate ECF Nos. 54 and 60 and to close this case.